UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
AT LAW AND IN ADMIRALTY

UNITED STATES OF AMERICA,

              Plaintiff,

          v.

APPROXIMATELY 509,728.59 TETHER
(USDT) CRYPTOCURRENCY FROM
BINANCE ACCOUNT ENDING IN 1243, and

APPROXIMATELY 25,456.029 DOGECOIN
(DOGE) CRYPTOCURRENCY FROM
BINANCE ACCOUNT ENDING IN 1243,

              Defendants.

**SEALED**

Case No.

---

## VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM

The United States of America, by its attorneys, Richard G. Frohling, United States

Attorney for the Eastern District of Wisconsin, and Bridget J. Schoenborn, Assistant United

States Attorney for this district, alleges the following in accordance with Supplemental

Rule G(2) of the Federal Rules of Civil Procedure:

### Nature of the Action

1.      This is a civil action to forfeit properties to the United States of America, under

18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6), for violations of 18 U.S.C. § 1956(a)(1) and

21 U.S.C. §§ 841(a)(1), 841(h), and 846.

**The Defendants In Rem**

2.      The defendant property, approximately 509,728.59 Tether (USDT) cryptocurrency from Binance account ending in 1243, held in the name of Usman Mehdi, was seized on or about October 15, 2021, in San Francisco, California.

3.      The defendant property, approximately 25,456.029 Dogecoin (DOGE) cryptocurrency from Binance account ending in 1243, held in the name of Usman Mehdi, was seized on or about October 15, 2021, in San Francisco, California.

4.      The Drug Enforcement Administration seized the defendant properties pursuant to seizure warrant 21-MJ-187 issued by United States Magistrate Judge William E. Duffin in the Eastern District of Wisconsin on October 15, 2021.  This warrant is sealed until October 27, 2022.

5.      The defendant properties are presently in the custody of the Drug Enforcement Administration in Milwaukee, Wisconsin.

**Jurisdiction and Venue**

6.      This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

7.      This Court has *in rem* jurisdiction over the defendant properties under 28 U.S.C. § 1355(b).

8.      Venue is proper in this judicial district under 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to the forfeiture occurred, at least in part, in this district.

**Basis for Forfeiture**

9.      The defendant property, approximately 509,728.59 Tether (USDT) cryptocurrency from Binance account ending in 1243, is subject to forfeiture under 21 U.S.C. § 881(a)(6) because (1) it represents proceeds of distribution of controlled substances and a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) it represents proceeds of distribution of controlled substances by means of the Internet and a conspiracy to deliver, distribute, or dispense controlled substances by means of the Internet, in violation of 21 U.S.C. §§ 841(h) and 846.

10.      The defendant property, approximately 509,728.59 Tether (USDT) cryptocurrency from Binance account ending in 1243, is also subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) because it was involved in money laundering transactions in violation of 18 U.S.C. § 1956(a)(1).

11.      The defendant property, approximately 25,456.029 Dogecoin (DOGE) cryptocurrency from Binance account ending in 1243, is subject to forfeiture under 21 U.S.C. § 881(a)(6) because (1) it represents proceeds of distribution of controlled substances and a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) it represents proceeds of distribution of controlled substances by means of the Internet and a conspiracy to deliver, distribute, or dispense controlled substances by means of the Internet, in violation of 21 U.S.C. §§ 841(h) and 846.

12.      The defendant property, approximately 25,456.029 Dogecoin (DOGE) cryptocurrency from Binance account ending in 1243, is also subject to forfeiture under

3

18 U.S.C. § 981(a)(1)(A) because it was involved in money laundering transactions in violation of 18 U.S.C. § 1956(a)(1).

## Statutory background

13.     The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 amended the Controlled Substances Act to address online pharmacies, codified at Title 21, United States Code, Section 829. No controlled substance that is a prescription drug, as determined by the Federal Food, Drug and Cosmetic Act, may be delivered, distributed, or dispensed by means of the Internet without a valid prescription, as required by Title 21, Code of Federal Regulations, Section 1306.09(a) in violation of 21 U.S.C. §§ 829(e), 841(a)(1), 841(h), and 843(c)(2)(A).

14.     According to 21 U.S.C. § 829(e),

A.     The term "valid prescription" means a prescription that is issued for a legitimate medical purpose in the usual course of professional practice by –

i.     a practitioner who has conducted at least one in-person medical evaluation of the patient; or

ii.     a covering practitioner.

B.     The term "in-person medical evaluation" means a medical evaluation that is conducted with the patient in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals.

C.     The term "covering practitioner" means, with respect to the patient, a practitioner who conducts a medical evaluation (other than an in-person medical evaluation) at the request of a practitioner who –

i.     has conducted at least one in-person medical evaluation of the patient or an evaluation of the patient through the practice of telemedicine, within the previous 24 months; and

ii.     is temporarily unavailable to conduct the evaluation of the patient.

4

15.     The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 also added new provisions to prevent the illegal distribution of controlled substances by means of the Internet, including registration requirements of online pharmacies, Internet pharmacy website disclosure information requirements, and prescription reporting requirements for online pharmacies.

16.     According to C.F.R. § 1301.11(b) as provided in § 303(f) and § 401(h) of the Act (21 U.S.C. § 823(f) and § 841(h)), it is unlawful for any person who falls within the definition of "online pharmacy" (as set forth in §102(52) of the Act (21 U.S.C. § 802.52) and C.F.R. § 1300.4(h)) to deliver, distribute, or dispense a controlled substance by means of the Internet if such person is not validly registered with a modification of such registration authorizing such activity (unless such person is exempt from such modified registration requirement under the Act or this chapter).

## Facts

17.     Adderall is a Schedule II controlled substance.

18.     Percocet is a Schedule II controlled substance.

19.     Alprazolam is a Schedule IV controlled substance.

20.     Ambien is a Schedule IV controlled substance.

21.     Xanax is a Schedule IV controlled substance.

## Investigation of Online Pharmacies Distributing Controlled Substances Without Valid Prescriptions

22.     Agents and task force officers with the Milwaukee District Office of the Drug Enforcement Administration ("DEA") have been investigating online pharmacies that advertise for sale both controlled and non-controlled pharmaceuticals, including Schedule II and IV controlled substances.

5

23.     DEA's investigation identified one such drug trafficking organization ("DTO") that operated illegal online pharmacy websites, including Pharmacyonline365 and its associated online pharmacy MEDS4U.

24.     Many of the DTO's drug parcels originated from Pakistan and then were shipped through the United Arab Emirates to the United States or the United Kingdom.  In addition, drug parcels were often reshipped from London and the Philippines by drop shippers.

**Co-conspirators identified as "SOI-1" and "SOI-2"**

25.     Agents identified a network of co-conspirators involved in the DTO, including one co-conspirator based in Florida ("SOI-1") and another based in Texas (SOI-2").

26.     SOI-1 and SOI-2 received bulk shipments of controlled pharmaceuticals from overseas and reshipped them to customers throughout the United States.

27.     From about July 2019 through August 2020, undercover agents had purchased controlled pharmaceuticals numerous times from SOI-1 and SOI-2, without providing valid prescriptions.

28.     In August 2020, agents executed search warrants at the residences of SOI-1 and SOI-2 and seized, among other things, electronic devices and documents containing evidence identifying drug suppliers and customers, along with communications related to the sale of controlled substances and money laundering of drug proceeds.

29.     Through records and interviews, agents further identified multiple drug suppliers, email accounts, Bitcoin accounts, and WhatsApp accounts used by the drug suppliers to conduct drug transactions.  Information included, but is not limited to, the following:

    A.      "Dave" and "Robin" were a brother/sister duo who brokered drug orders on behalf of a shipper located in the United Arab Emirates.

6

B. Based on IP address records, Robin was located in Pakistan and was in regular communication with phone numbers located in Pakistan, the United Kingdom, India, and the United Arab Emirates.

C. SOI-2 received multiple types of controlled pharmaceuticals from Dave and Robin and then reshipped those pharmaceuticals to customers in the United States.

D. Pharmaceutical purchases were conducted by communicating via WhatsApp. Drug payments were made via Bitcoin to different Bitcoin addresses provided by Dave and Robin.

**Pharmaceutical customer identified as "SOI-3"**

30. Milwaukee agents learned of a DEA Miami investigation into an Indian-based Dark Web vendor using a United Kingdom drop-shipping organization. This Dark Web vendor was being supplied by Robin through the United Kingdom drop shipper. Agents reviewed images of parcels being shipped from the United Kingdom to the United States. One of those parcels had been shipped to a customer in Coral Springs, Florida (SOI-3).

31. On June 24, 2021, agents interviewed SOI-3 at SOI-3's residence in Coral Springs, Florida. SOI-3 purchased 30 Xanax 1mg tablets from the online pharmacy www.pharmacyonline365.com without providing a valid prescription. SOI-3 received the parcel containing the 30 Xanax tablets a few days before June 24, 2021.

32. After placing the Xanax order through www.pharmacyonline365.com, SOI-3 received an email from "Alex Mxxxxxx" from email address invoiceatmxxxxxx@yahoo.com instructing SOI-3 how to pay for the drug purchase.

A. United States Postal Service tracking records show that the Xanax parcel was checked from an IP address located in Pakistan.

B. The account holder related to email address invoiceatmxxxxxx@yahoo.com is Alex Mxxxxxx.

7

C.	The telephone number associated with email address invoiceatmxxxxxx@yahoo.com is a Pakistan number, and the IP address for invoiceatmxxxxxx@yahoo.com is located in Pakistan.

33.	SOI-3 made multiple purchases from www.pharmacyonline365.com over the prior year without providing valid prescriptions.

34.	According to its website, www.pharmacyonline365.com offered the same pharmaceuticals that Robin offered SOI-2.  Additionally, because the telephone number and IP address for www.pharmacyonline365.com are based in Pakistan, and because the parcels were shipped from the United Kingdom to the United States, case agents believe that Robin was also associated with the operation of www.pharmacyonline365.com.  Case agents further believe Robin is associated with pharmacyonline365.com because analysis of the Bitcoin wallet used by www.pharmacyonline365.com showed Bitcoin transfers to Robin's Paxful Bitcoin account.

**Pharmaceutical customer identified as "SOI-4"**

35.	On July 23, 2021, agents interviewed a customer in Milwaukee, Wisconsin (SOI-4).  SOI-4 was the intended recipient of a drug parcel shipped from the same United Kingdom drop shipper referenced in paragraph 30.  Agents intercepted that parcel.  Investigators with Homeland Security Investigations opened the parcel and found that it contained Xanax tablets.

36.	SOI-4 stated that in April 2021, SOI-4 purchased 180 tablets of Xanax and a quantity of Viagra, without valid prescriptions, from what SOI-4 believed was the online pharmacy www.pharmacyonline365.com.

37.	SOI-4 received multiple emails from "Alex Mxxxxxx" from email address invoiceatmxxxxxx@yahoo.com instructing SOI-4 how to pay for the drug purchase.  SOI-4 also

received an email from invoiceatmxxxxxx@yahoo.com providing SOI-4 with the tracking number for the drug parcel, which was subsequently seized by agents.

38. Because the telephone number and IP address for www.pharmacyonline365.com are based in Pakistan, the website offered the same pharmaceuticals for sale, the parcels were shipped from the United Kingdom to the United States, and the email address is the same as that provided to SOI-3, case agents believe that Robin was also associated with the operation of www.pharmacyonline365.com.

**Pharmaceutical customer identified as "SOI-5"**

39. Agents interviewed a customer in Stevens Point, Wisconsin (SOI-5). SOI-5 purchased Ambien, without valid prescriptions, at least two times from an online pharmacy. SOI-5 provided agents with email communications between SOI-5 and the online pharmacy MEDS4U. As instructed by the online pharmacy, SOI-5 paid for the drug orders via Bitcoin.

40. On or about January 29, 2021, SOI-5 sent payment of approximately $181.00 to private wallet Bitcoin address 1K2xb1SMeEcSrxMtsTHfLETJppsYAn5Tac, which is the same Bitcoin address that an undercover agent was later directed to send drug payment for a September 15, 2021, drug purchase from www.pharmacyonline365.com as described in paragraph 48.

**Undercover buys from Robin of controlled substances without valid prescriptions**

41. From about January 2021 through September 2021, Robin coordinated multiple shipments of counterfeit Adderall and alprazolam tablets to an undercover agent in Milwaukee, Wisconsin ("UC").

42. On November 24, 2020, UC began communicating with Robin via WhatsApp at the phone number acquired from SOI-2.

43. Robin messaged UC a list of approximately 23 different medications for sale, including Percocet 10mg and Adderall 30mg.

    A. Percocet and Adderall are the same medications that SOI-1 and SOI-2 had purchased from Robin and reshipped to undercover agents.

    B. UC and Robin discussed shipping, drug quantities, and pricing. Robin stated that Bitcoin was the only accepted form of payment for the drugs.

    C. Robin solicited UC to receive bulk drug parcels from Robin and then reship the drugs to Robin's customers.[1]

44. On January 16, 2021, UC communicated with Robin and conducted a controlled purchase of 500 tablets of Adderall 30mg and 500 tablets of Percocet 10mg, without providing valid prescriptions.

    A. Robin said that 1,000 tablets was the minimum order size that the shipper would ship.

    B. Robin provided UC with a Paxful Bitcoin address where payment was to be sent. UC sent Bitcoins worth approximately $3,100 to the Paxful Bitcoin address provided by Robin. Robin then confirmed that UC's payment had been received.

    C. UC received the shipment containing approximately 1,000 Adderall tablets but no Percocet tablets.

    D. The parcel had been shipped from Pakistan through the United Arab Emirates.

45. On April 18, 2021, UC communicated with Robin and conducted a controlled purchase of 1,000 tablets of Adderall 30mg, without providing a valid prescription.

    A. Robin said she would include in the shipment 120 alprazolam tablets. Robin directed UC to keep 20 of the alprazolam tablets and to ship the remaining 100 alprazolam tablets to a United States customer.

    B. Robin provided UC with a Paxful Bitcoin address where payment was to be sent. UC sent Bitcoins worth approximately $3,100 to the Paxful Bitcoin address provided by Robin. Robin then confirmed that UC's payment had been received.

---

[1] UC declined Robin's request.

C.     The parcel was seized by the United States Customs and Border Protection (CBP) and transferred to agents in Milwaukee.

D.     The parcel contained approximately 1,000 Adderall tablets and 120 alprazolam tablets.

E.     The parcel had been shipped from Pakistan through the United Arab Emirates.

46.     On July 2, 2021, UC communicated with Robin and conducted a controlled purchase of 1,000 tablets of Adderall 30mg, without providing a valid prescription. Robin stated that because the April 18, 2021 drug parcel had been seized by CBP, she would include 1,000 tablets of Percocet 10mg at no cost to UC.

A.     Robin said that 500 tablets was the maximum size for a parcel shipped from the United Kingdom, so the July 2, 2021 order would arrive in four parcels.

B.     Robin provided UC with a Paxful Bitcoin address where payment was to be sent. UC transferred Bitcoins worth approximately $3,100 to the Paxful Bitcoin address provided by Robin. Robin then confirmed that UC's payment had been received.

C.     UC received the first of the four parcels which had been shipped from the United Kingdom via the postal service. The parcel contained approximately 537 Adderall tablets.

D.     Agents worked with law enforcement authorities in the United Kingdom ("UK Authorities"). UK Authorities interviewed a post office employee in London and acquired video surveillance that showed a Pakistani male had shipped the drug parcel that UC purchased on July 2, 2021.

    i.     As seen on that video surveillance by UK Authorities, this Pakistani male withdrew currency from an ATM and then used that currency to pay for the shipping of UC's drug parcel as well as approximately 18 additional suspected drug parcels to various recipients in the United States.

    ii.     UK Authorities identified the bank account holder of the account from which the funds were withdrawn as an individual having the initials M.I., who was born in Pakistan and now lives in London. Agents compared the United

11

Kingdom driver's license photograph of M.I. with the Pakistani male who shipped the drug parcel to UC, and agents were able to positively confirm the shipper of the drug parcel was M.I.

E.　UK Authorities acquired July 31, 2021 video surveillance from the same London post office.  UK Authorities again saw M.I. ship 23 suspected drug parcels to various recipients in the United States.

　　i.　Most of the 23 parcels were delivered, but agents intercepted and seized two of the parcels.  One parcel was seized going to a customer in Stevens Point, Wisconsin (SOI-5) and the other parcel was seized going to a customer in Tomball, Texas.

　　ii.　Agents, with the assistance from Homeland Security Investigations, opened the two parcels and found suspected counterfeit Percocet tablets in both parcels.

F.　On September 11, 2021, UK Authorities seized a parcel sent from Pakistan to the United Kingdom.  That parcel contained 900 grams of suspected counterfeit Adderall tablets.  UK Authorities believe that parcel was intended for M.I. based on linking a phone number on the drug parcel to M.I.

47.　On September 1, 2021, an undercover agent placed an order for 30 Percocet tablets from the online pharmacy www.pharmacyonline365.com, without providing a valid prescription.

A.　The undercover agent was directed to make payment, via Western Union, to a subject in the Philippines.

B.　The undercover agent communicated with the customer service employee by phone and email and was told that the online pharmacy shipped drug parcels from both the United Kingdom and the Philippines.

C.　On September 14, 2021, the undercover agent received an email containing the tracking number for the drug parcel.  This email was received from shipping_m4u_365@yahoo.com.  Furthermore, the email address meds_4u@yahoo.com was copied on this email providing the tracking number of the drug parcel.

D.　A parcel was shipped to the undercover agent from the Philippines, but was returned to sender.  This parcel was seized by Philippines authorities

12

and contained tablets similar to previously purchased Percocet. A replacement parcel was then shipped from the United Kingdom, but it was never received by the undercover agent. Finally, another replacement parcel was shipped from Pakistan, and Pakistan authorities seized this parcel along with numerous others. The seized parcels contained thousands of tablets of Percocet, Adderall, and other medications.

48.     On September 15, 2021, an undercover agent placed an order for 30 tablets of

Adderall and 30 tablets of Xanax from the online pharmacy www.pharmacyonline365.com,

without providing valid prescriptions.

A.     The undercover agent was directed to make payment of $349.00, via Bitcoin, to private wallet Bitcoin address 1K2xb1SMeEcSrxMtsTHfLETJppsYAn5Tac, which is the same Bitcoin address that SOI-5 was directed to send drug payment as described in paragraph 40.

B.     The undercover agent communicated with the customer service employee by phone and email and was told that the Xanax would be shipped from the United Kingdom and the Adderall would be shipped from the Philippines.

C.     The undercover agent was given a tracking number showing that the Xanax parcel originated from the United Kingdom. Records show that the parcel was shipped from a post office located in London.

D.     The undercover agent received an email from the online pharmacy MEDS4U, which sold the same medications sold by www.pharmacyonline365.com. The undercover agent was informed by the customer service representative that both online pharmacies are associated with one another.

E.     The undercover agent received the parcel containing 30 Xanax tablets shipped from London, and these tablets tested positive for alprazolam (Xanax).

F.     The undercover received an email from MEDS4U reporting a second parcel containing 30 tablets of Xanax. The undercover agent received this parcel from London.

G.     The undercover agent received the parcel containing 30 Adderall tablets shipped from the Philippines. These tablets tested positive for ketamine (a schedule III controlled substance).

13

**Drug payments made by SOI-5 and by UC for the September 15, 2021 buy traceable to Binance 1243**

49.     As noted in paragraphs 39 and 40, SOI-5 purchased drugs from the online pharmacy MEDS4U and was instructed to send payment – and did send payment – to private wallet Bitcoin address 1K2xb1SMeEcSrxMtsTHfLETJppsYAn5Tac.

50.     As noted in paragraph 48, an undercover agent purchased drugs from the online pharmacy www.pharmacyonline365.com and was instructed to send payment – and did send payment – to the same private wallet Bitcoin address 1K2xb1SMeEcSrxMtsTHfLETJppsYAn5Tac.

51.     During an investigation into the online pharmacy MEDS4U by DEA agents in Fort Worth, Texas, agents communicated with a customer service representative at MEDS4U in an undercover capacity.  During a conversation with the customer service representative on January 21, 2021, the customer service representative provided the same private wallet Bitcoin address of 1K2xb1SMeEcSrxMtsTHfLETJppsYAn5Tac to which the undercover agent was to send drug payment for the purchase of Adderall.[2]

52.     Based on their training and experience, and the investigation to date, case agents believe that the operator(s) of www.pharmacyonline365.com are also associated with MEDS4U.

**Movement of funds into Binance account number ending in 1243 ("Binance 1243")**

53.     According to bank records, funds from the private wallet Bitcoin address 1K2xb1SMeEcSrxMtsTHfLETJppsYAn5Tac had been transferred to Binance Bitcoin address 16T8YgqwgXTds8ysSn64TcQERsLEQwdWr6.

---

[2] The undercover agent did not complete the undercover drug purchase.

54.     Some of the August 2021 transfers from the private wallet Bitcoin address

1K2xb1SMeEcSrxMtsTHfLETJppsYAn5Tac to the Binance Bitcoin address

16T8YgqwgXTds8ysSn64TcQERsLEQwdWr6 were as follows:

| Date - Time | Amount | US Dollar Value |
|---|---|---|
| 8/4/2021 - 11:22 | 0.00366367 | $138.76 |
| 8/4/2021 - 12:11 | 0.41622406 | $15,862.46 |
| 8/25/2021 - 16:55 | 0.0020517 | $97.85 |
| 8/25/2021 - 18:52 | 0.30718268 | $15,021.32 |

55.     Bitcoin from Binance Bitcoin address

16T8YgqwgXTds8ysSn64TcQERsLEQwdWr6 was transferred into Binance account number

ending in 1243 ("Binance 1243"), the account from which the defendant properties were seized.

56.     Binance 1243 was created on or about July 27, 2020.

   A.     The person who created Binance 1243 identified himself with a Pakistan
          National Identification Card as Usman Mehdi.  Usman Mehdi is a
          Pakistani National residing in the United Arab Emirates.

   B.     The IP addresses used to access Binance 1243 were primarily located in
          the United Arab Emirates and Pakistan.

57.     Beginning about April 12, 2021, a substantial amount of funds was transferred

into Binance 1243 every couple of days, sometimes multiples times in one day from the same

Bitcoin address and, on at least one occasion, five times in one day.

58.     Bitcoin from the private wallet Bitcoin address used by the online pharmacies

www.pharmacyonline365.com and MEDS4U to receive drug payments was transferred into

Binance 1243.

59.     Funds were transferred out of Binance 1243 every few days, on occasion daily,

and on at least three occasions, seven times in one day.

60. The form of cryptocurrency transferred into and transferred out of Binance 1243 included Tether. An abundance of Tether had been transferred into Binance 1243 and, shortly thereafter, transferred out.

61. On or about October 8, 2021, the account user transferred all the Bitcoin in Binance 1243 into Tether.

62. From about May 2021 through October 2021, approximately $14.6 million of Tether[3] had been transferred into and out of Binance 1243.

    A.    The Tether was transferred into Binance 1243 from multiple private wallets and was transferred out of Binance 1243 into other private wallets.

    B.    Sometimes the Tether was moved through another private wallet before being transferred into one of a series of other Binance accounts. The Tether was then transferred out of those Binance accounts into various additional private wallets.

63. Based on my training and experience, and the investigation to date, I am aware that criminal proceeds in the form of cryptocurrency are regularly transferred between private wallets and cryptocurrency exchanges, such as Binance 1243, to conceal the source and nature of the funds. Sophisticated drug traffickers and money launderers prefer to use private cryptocurrency wallets, which are stored on personal devices such as a laptop computer, cellular telephone, or thumb drive. This is preferred for the security of these funds since the funds are physically stored in the device (private wallet). Eventually, the funds need to reach a cryptocurrency exchange which is similar to a "bank for cryptocurrency." This is required by the drug trafficker/money launderer because the cryptocurrency exchange is linked to a bank account, and that is how the funds are commonly exchanged from cryptocurrency to fiat currency.

---

[3] One Tether equals one dollar in United States currency.

64.     On October 15, 2021, in the Eastern District of Wisconsin, United States Magistrate Judge William E. Duffin issued warrant 21-MJ-187 authorizing the seizure of all cryptocurrency in Binance 1243.

65.     On or about October 15, 2021, agents served warrant 21-MJ-187 on Binance and received the defendant approximately 509,728.59 Tether (USDT) cryptocurrency and the defendant approximately 25,456.029 Dogecoin (DOGE) cryptocurrency from Binance consisting of all Tether and Dogecoin in Binance 1243.

**Additional drug payments involving the DTO**

66.     In addition to the drug payments deposited and transferred into Binance 1243 discussed above, case agents are aware that the DTO deposited drug proceeds into additional accounts. Specifically, funds from the private wallet Bitcoin address 1K2xb1SMeEcSrxMtsTHfLETJppsYAn5Tac were transferred to various accounts such as R.A.'s Paxful Bitcoin account discussed in the paragraphs below.

**Drug payments made by SOI-2**

67.     One of the Bitcoin addresses to which SOI-2 sent payments for the purchases of controlled substances from Dave and Robin is part of a Paxful cryptocurrency account held in the name of an individual having the initials B.A.

68.     The telephone number associated with the Paxful account is a Pakistan number. Additionally, the majority of the IP addresses for the account indicate the user is likely located in Pakistan.

69.     The email address associated with the Paxful account is bxxxxaxxxxx55@gmail.com.

70.     Records identify an individual having the initials A.A. as being B.A.'s father.

17

71.     Funds were transferred out of the Paxful account and transferred into a Local Bitcoins account located in Finland.  The funds were then transferred out of the Local Bitcoins account.

72.     The account holder for the Local Bitcoins account in Finland is an individual having the initials A.M. with an address in Pakistan.

73.     Messages between the account holder and clients show the Local Bitcoins account was being used to buy and sell Bitcoins for numerous clients, including the Paxful account linked to email address bxxxxaxxxxx55@gmail.com which received drug payments.

74.     Records from Finland's law enforcement authorities show approximately $4.3 million in United States dollars had been received and subsequently transferred out of the Local Bitcoins account.

**Drug payments made by UC**

75.     According to records from Paxful Bitcoin, an individual having the initials R.A. is the account holder of the Paxful Bitcoin address to which Robin instructed UC to pay for the drugs that UC had purchased on January 16, 2021; April 18, 2021; and July 2, 2021.

76.     The telephone number associated with the Paxful Bitcoin address is a Pakistan number.  Additionally, the majority of the IP addresses for this Paxful Bitcoin address indicate the user is likely located in Pakistan.

77.     The email address associated with R.A.'s Paxful Bitcoin address is bxxxxaxxxxx55@gmail.com.  This is the same email address associated with the Paxful account held in the name of B.A., to which SOI-2 sent payments for the purchases of controlled substances from Dave and Robin.

78.     Records identify A.A. as R.A.'s husband.  Therefore, the account holder of this Paxful Bitcoin address, R.A., is likely the mother of the Paxful account holder, B.A., to which SOI-2 had sent payments for purchases of controlled substances.

79.     Based on all the foregoing, case agents believe, based on their training and experience, and the investigation to date, that the DTO uses additional accounts to receive drug proceeds and to launder money.

## Warrant for Arrest In Rem

80.     Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the defendant properties pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## Claim for Relief

81.     The plaintiff repeats and incorporates by reference the paragraphs above.

82.     By the foregoing and other acts, the defendant property, approximately 509,728.59 Tether (USDT) cryptocurrency from Binance account ending in 1243, represents (1) proceeds of distribution of controlled substances and a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) proceeds of distribution of controlled substances by means of the Internet and a conspiracy to deliver, distribute, or dispense controlled substances by means of the Internet, in violation of 21 U.S.C. §§ 841(h) and 846.

83.     The defendant approximately 509,728.59 Tether (USDT) cryptocurrency from Binance account ending in 1243 is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6).

19

84. By the foregoing and other acts, the defendant property, approximately 509,728.59 Tether (USDT) cryptocurrency from Binance account ending in 1243, was involved in money laundering transactions in violation of 18 U.S.C. § 1956(a)(1).

85. The defendant approximately 509,728.59 Tether (USDT) cryptocurrency from Binance account ending in 1243 is therefore subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

86. By the foregoing and other acts, the defendant property, approximately 25,456.029 Dogecoin (DOGE) cryptocurrency from Binance account ending in 1243, represents (1) proceeds of distribution of controlled substances and a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) proceeds of distribution of controlled substances by means of the Internet and a conspiracy to deliver, distribute, or dispense controlled substances by means of the Internet, in violation of 21 U.S.C. §§ 841(h) and 846.

87. The defendant approximately 25,456.029 Dogecoin (DOGE) cryptocurrency from Binance account ending in 1243 is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6).

88. By the foregoing and other acts, the defendant property, approximately 25,456.029 Dogecoin (DOGE) cryptocurrency from Binance account ending in 1243, was involved in money laundering transactions in violation of 18 U.S.C. § 1956(a)(1).

89. The defendant approximately 25,456.029 Dogecoin (DOGE) cryptocurrency from Binance account ending in 1243 is therefore subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the United States of America prays that a warrant of arrest for the defendant properties be issued; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgment declare the defendant

properties to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and equitable, together with the costs and disbursements of this action.

Dated at Milwaukee, Wisconsin, this 10th day of January, 2022.

Respectfully submitted,

RICHARD G. FROHLING
United States Attorney

By:    *s/BRIDGET J. SCHOENBORN*
BRIDGET J. SCHOENBORN
Assistant United States Attorney
Wisconsin Bar Number: 105396
Attorney for Plaintiff
Office of the United States Attorney
Eastern District of Wisconsin
517 East Wisconsin Avenue, Room 530
Milwaukee, WI 53202
Telephone: (414) 297-1700
Fax: (414) 297-1738
E-Mail: bridget.schoenborn@usdoj.gov

**Verification**

I, Scott Simons, hereby verify and declare under penalty of perjury that I am a Task Force Officer with the Drug Enforcement Administration ("DEA"), that I have read the foregoing Verified Complaint for Civil Forfeiture *in rem* and know the contents thereof, and that the factual matters contained in paragraphs 17 through 79 of the Verified Complaint are true to my own knowledge.

The sources of my knowledge are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Task Force Officer with the DEA.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Date:  January 7, 2022          *s/Scott Simons*
                                Scott Simons
                                Task Force Officer
                                Drug Enforcement Administration